```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MARIE P. NOZAN,

                    Plaintiff,
                                                              MEMORANDUM AND ORDER
        -against-                                             Case No. CV-05-1948 (FB)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
----------------------------------------------------------x
```

*Appearances:*

For the Plaintiff:
JAMES M. BAKER, ESQ.
Center for Disability Advocacy Rights
841 Broadway, Suite 605
New York, NY 10003

For the Defendant:
ROSLYNN R. MAUSKOPF, ESQ.
United States Attorney
Eastern District of New York
By: JOHN M. KELLY, ESQ.
Assistant United States Attorney
One Pierrepont Plaza, 14th Floor
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

Plaintiff Marie P. Nazon ("Nazon") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security disability insurance benefits ("DIB"). Plaintiff and Commissioner both move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the Administrative Law Judge ("ALJ") failed to develop a full and adequate record, the case is remanded for further proceedings.

I.

The following facts are taken from the Administrative Record ("A.R."):

On December 23, 2002, Nazon filed an application for DIB claiming that she had been disabled since November 1, 2001 as a result of a work-related accident. On May

12, 2003, the Social Security Administration ("SSA") rejected her application, finding that she was still able to perform light work. On May 20, 2003, Nazon requested a hearing before an ALJ. That hearing took place on October 19, 2004.

## A. The ALJ's Decision

On December 3, 2004, the ALJ issued a decision denying Nazon DIB based on the following findings:

- Despite discrepancies in Nazon's tax returns, hearing testimony, and subsequent submissions, "developing the additional evidence that would be necessary to determine whether the claimant actually performed substantial gainful activity . . . would unduly delay the adjudication of this claim because . . . a finding of 'not disabled' would result later in the sequential evaluation." A.R. at 21.

- "The claimant has disc disease in her cervical and lumbar spine, myofascial syndrome, left shoulder tendinitis, history of left knee contusion/sprain and history of left ankle injury which are 'severe' as the term is defined in the Social Security context . . . ." *Id.* The ALJ found that Nazon's other conditions were not severe.

- None of Nazon's severe impairments met or equaled the criteria in the Listing of Impairments.

- "The claimant's allegations are of poor credibility, and the evidence as a whole suggests that they are exaggerated." *Id.*

- "The claimant's residual functional capacity is to lift and/or carry up to 20 pounds occasionally; lift and/or carry up to 10 pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday, given brief opportunities to stretch every 3/4 to 1 hour; do occasional climbing, balancing, stooping, kneeling, crouching, and crawling; perform upper extremity movements except elevating her left arm above 90 degrees; and perform all other basic work-related activities without significant restriction." *Id.* at 21-22.

- Nazon's medically determinable impairments and residual functional

capacity do not prevent her from performing her past relevant work.

In considering all of the medical opinions in the record, the ALJ accorded substantial weight to the testimony of Dr. Fechner, the medical expert who testified at the hearing on behalf of the Commissioner. The ALJ also gave significant weight to the opinion of consulting physician Dr. Seo, but gave it "less than substantial weight because, unlike [Dr. Fechner], [Dr. Seo] apparently was not provided with the MRI findings or the other examining sources reports." *Id.* at 17. The ALJ gave little weight to the opinion of a second consulting physician, Dr. Alvarez, because only the last page of his report was submitted and the doctor's examination findings were not included in the submitted portion.

The ALJ gave little weight to the opinions of Nazon's treating physicians, Dr. Baldeo and Dr. Majeed, despite their relationship with the claimant, because (1) "the clinical findings that they cited were almost exclusively determined by the claimant's self-reports . . . which are of poor credibility," (2) they did not state the dates or intensity of the myospasms they observed, and (3) there was no indication that they reviewed the reports from the other examining physicians. *Id.* at 18.

The ALJ discredited Nazon's hearing testimony because (1) the pain management team had not significantly increased her prescription of antidepressant pain medication over the course of her treatment, (2) Nazon had a history of not seeking treatment (e.g., allowing her pain medication to run out and not refilling it for two weeks), (3) Nazon's "general credibility [was] poor in view of the inconsistencies among her initial and amended tax returns," and (4) "a member of her pain management team . . . felt that

she only put a minimal effort into her attempts at motor strength." *Id.* at 19-20.

The ALJ's decision became the final decision of the Commissioner on February 25, 2005, when the Appeals Council denied plaintiff's request for review.

## B. Plaintiff's Arguments

Plaintiff argues that the ALJ erred as a matter of law in that he:

- Rejected treating physician opinions as not well-supported by medically acceptable clinical and laboratory diagnostic techniques based on his own faulty, lay analysis.

- Failed to weigh treating physician opinions against the opinion of the non-examining medical expert in terms of the specific factors required by the Commissioner's regulations.

- Rejected the treating physician opinions on the grounds that the physicians failed to supply copies of their clinical records, without requesting the records himself or alerting plaintiff of the need to obtain them.

- Improperly cited his positive experience with the medical expert in other cases as support for his decision to credit the medical expert's testimony over other evidence.

- Improperly based his determination of plaintiff's credibility on his stated, but unresolved, suspicion that Nazon filed false tax returns.

In sum, plaintiff argues that the ALJ (1) misapplied the treating physician rule, (2) failed to develop the record, and (3) made an improper credibility finding.

## II.

## A. Standard of Review

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). The

4

former determination requires the Court to ask, *inter alia*, whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d. Cir 1982) (citation and internal quotation marks omitted). The latter determination requires the Court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In that regard, ALJs must ensure that the crucial factors in their determinations are "set forth with sufficient specificity to enable [a court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

**B. The Five-Step Analysis**

To determine whether an individual is entitled to disability benefits, the Commissioner must employ a five-step sequential analysis:

> First, the Commissioner determines whether the individual is doing substantial gainful work. 20 C.F.R. § 404.1520(b).
>
> If she is not, the Commissioner then determines whether she has a severe impairment that limits her ability to do work-related activities. [*Id.*] § 404.1520(c).
>
> If such an impairment exists, the Commissioner then considers medical evidence to determine if the impairment meets or equals the criteria of an impairment listed in Appendix 1 to 20 C.F.R. Pt. 404, Subpt. P. (the "Listing of Impairments"). [*Id.*] § 404.1520(d).
>
> If the impairment does not meet or equal a listed impairment, the Commissioner proceeds to the fourth step and analyzes

> whether the impairment prevents the individual from doing her past work. [*Id.*] § 404.1520(e).
>
> Finally, if an individual cannot perform her past work, the Commissioner determines whether her impairment prevents her from doing any other work. [*Id.*] § 404.1520(f). If so, the Commissioner finds the individual disabled. *Id.*

*Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999). "[T]his five-step analysis is sequential. Thus, if an individual is found to be disabled (or not) at any step, the Commissioner is not required to proceed to the next step." *Id.* (citation omitted).

"The claimant generally bears the burden of proving that she is disabled under the statute, but if the claimant shows that her impairment renders her unable to perform her past work, the burden then shifts to the Commissioner to show there is other gainful work in the national economy which the claimant could perform." *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) (citations and quotations omitted).

## C. Treating Physician Rule

Under the well-established "treating-physician rule," "'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)). Even when the rule does not require giving a treating physician's opinion controlling weight, the ALJ must nevertheless evaluate the opinion in accordance with specified criteria and "give good reasons in [the] notice of determination or decision for the weight [to be given to the] treating source's opinion."

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).

One component of the substantial evidence test is proper application of the treating physician rule. The Commissioner's regulation governing the treating physician rule provides that:

> Generally, we give more weight to opinions from your treating sources . . . . If we find that a treating source's opinion of the issues is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527; *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *Schall v. Apfel*, 134, F.3d 501, 503 (2d Cir. 1998). When the treating physician's testimony is not given controlling weight, other factors listed in the Social Security regulations are considered, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Shaw*, 221 F.3d at 134 (quoting *Clark v. Commissioner of Soc. Sec.*, 1434 F.3d 115, 118 (2d Cir. 1998)); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (noting that the less consistent a medical opinion is with the entire record, the less weight it is afforded by the Commissioner); *see also* 20 C.F.R. § 404.1527. The ALJ must consider all of the factors identified in the regulation in his decision; failure to do so is grounds for reversal. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (decision denying benefits is "flawed . . . [if] the ALJ fail[s] to consider all of the factors cited in the regulations"). The ALJ is required "to set forth her reasons for the weight she assigns to the treating physician's opinion." *Shaw*, 221 F.3d at 134; *see* 20 C.F.R. § 404.1527; *see also Snell*, 177 F.3d at 134 ("The requirement of

reason-giving exists, in part, to let claimants understand the disposition of their cases, even–and perhaps especially–when those dispositions are unfavorable.").

**D. Duty to Develop Record**

Correct application of the sequential process requires a full and complete medical record. *See* 20 C.F.R. § 404.1593. If the record is incomplete, the essentially non-adversarial nature of a benefits proceeding requires the ALJ to affirmatively develop the record. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999). Under the regulations, the SSA must develop the plaintiff's "complete medical history" and make "every reasonable effort" to help the plaintiff obtain the required medical reports. *Id.* § 404.1593. The duty to develop the record exists even where a claimant is represented by counsel. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).

This affirmative duty is enhanced when the record sought is that of a treating physician. *See Jones v. Apfel*, 66 F. Supp. 2d 518, 538 (S.D.N.Y. 1999) ("The ALJ's responsibility to assist a claimant in obtaining her medical records carries particular importance in light of the well-established treating physician rule, which requires an ALJ to grant special deference to the opinions of a claimant's treating physician."). "Reasonable efforts" in this context entails more than merely twice requesting medical reports from treating physicians; it includes issuing and enforcing subpoenas requiring the production of evidence, and advising the plaintiff of the importance of the evidence. *Jones*, 66 F. Supp. 2d at 538-539 (citing *Almonte v. Apfel*, 96 Civ. 1119, 1998 WL 150996, at *7 (S.D.N.Y. March 31, 1998)). The ALJ must also enter these attempts at evidentiary development into the record. *Id.*

The Commissioner must recontact the claimant's treating physician when the physician's report "does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e); *see also Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir. 1990) (finding ALJ failed to develop record where ALJ failed to inform claimant of his skepticism of treating physician's claim). The only exception from this requirement is where the Commissioner "know[s] from past experience that the source either cannot or will not provide the necessary findings." 20 C.F.R. § 404.1512(e)(2). *But see* Program Operations Manual System ("POMS") § DI 22505.0007 (SSA need not request medical source statements ["MSS"] "[f]rom a source who has, earlier, categorically refused to furnish an MSS for all patients, not just any one patient . . . .").

### E. Credibility Determinations

"It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation and quotation omitted).

### III.

Since the ALJ ruled in Nazon's favor at steps one and two of the five-step sequential analysis, no further discussion of those steps is required. The ALJ's failure to develop a full and adequate record, however, led to an improper application of the treating physician rule, which in turn affected the remaining steps of the analysis and the ALJ's ultimate finding of "no disability."

The opinions of treating physicians Dr. Baldeo and Dr. Majeed were entitled

to controlling weight if they were well supported by medically acceptable clinical and laboratory diagnostic techniques and were not inconsistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 404.1527(d)(2); *Green-Younger*, 335 F.3d at 106. In this case, the ALJ could not find sufficient support for those opinions. Rather than recontacting Nazon's treating physicians as required, *see* 20 C.F.R. § 404.1512(e); *Cruz*, 912 F.2d at 12, in order to fulfil his duty to develop the record, *see* 20 C.F.R. § 404.1593; *Tejada*, 167 F.3d at 774, the ALJ decided, based on the incomplete record before him, to give greater weight to the testimony of medical expert Dr. Fechner. Thus, the ALJ did not apply the correct legal standard.

Defendant argues that the ALJ was excused from the recontact requirement under 20 C.F.R. § 404.1512(e)(2), since "[t]he agency made numerous attempts to obtain records from Dr. Baldeo, who did not respond to these requests." Defendant's Mem. at 21 n.12 (citing A.R. at 153). The requests (three of them) were made in 2003 (over a year before the hearing), and Dr. Baldeo did respond by completing a standard medical report form on April 22, 2003. The three prior attempts are irrelevant, however, because the Commissioner had a separate obligation to recontact treating physicians where, as the ALJ found here, their reports "[did] not appear to be based on medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1512(e).

If the ALJ *had* developed a full and adequate record and nonetheless found that the opinions of Nazon's treating physicians were not supported by medical findings, he would have then been required to weigh those opinions against other medical opinions according to the factors enumerated in 20 C.F.R. § 404.1527. *See Shaw*, 221 F.3d at 134. The

ALJ did not develop the record, though, and so the Court need not reach this issue. Similarly, the Court need not reach plaintiff's argument that the ALJ improperly cited his prior positive experiences with Dr. Fechner, since any comparison (based on proper or improper factors) would be premature on the incomplete record here.

Finally, the plaintiff's argument challenging the ALJ's credibility determination is without merit. The ALJ's suspicion that Nazon filed false tax returns was one factor, but not the only factor, that the ALJ relied upon to make this determination; accordingly, the ALJ's failure to resolve the matter is inconsequential. More importantly, it is specifically the function of the ALJ to make credibility determinations. *See Aponte*, 728 F.2d at 591.

## CONCLUSION

For the foregoing reasons, the case is remanded for further proceedings in accordance with this Memorandum and Order.

**SO ORDERED.**

>             /signed/
> FREDERIC BLOCK
> Senior United States District Judge

Brooklyn, New York
October 11, 2006